RECEIVED
BY MAIL

FEB 1 8 2020

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
CAPE GIRARDEAU

# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI

(Rush Hudson Limbaugh Sr. U.S. Courthouse, 555 Independence Street, Cape Girardeau, MO 63703)

|  |  |  |
|---|---|---|
| Ronald Satish Emrit, | ) | |
| Plaintiff (Pro Se) | ) | |
| | ) | C. A. No._____ |
| v. | ) | |
| | ) | |
| Secretary Betsy DeVos, | ) | |
| United States Department of | ) | |
| Education, Default Resolution | ) | |
| Group, NelNet, & Action | ) | |
| Financial Services | ) | |
| Defendants | ) | |
| | ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

COMES NOW, the plaintiff Ronald Satish Emrit, who is bringing forth this complaint against the five defendants alleging that there has been a violation of the plaintiff's rights according to the Equal Protection Clause and Due Process Clause of the Fifth and Fourteenth Amendment and the Privileges and Immunities Clause (of Article IV, Section 2, Clause 1 of the Constitution) in addition to violations of usury laws and provisions of federal black-letter law, the common law of contracts (according to Restatement (Second) of Contracts) and tortious acts not barred by the Eleventh Amendment doctrine of sovereign immunity or the Federal Tort Claims Act (FTCA). In bringing forth this complaint, the plaintiff states, avers, and alleges the following:

# I.) NATURE OF THE CASE

1.) Given the serious nature of the allegations contained in this complaint and/or cause of action, the plaintiff would appreciate it if the court would allow him to amend his complaint at least once if the magistrate judge and/or district judge issues an "Order to Show Cause" (OSC) or Report and Recommendation (R & R) indicating that the plaintiff's complaint should be dismissed.

2.) Likewise, the plaintiff would appreciate it if the court would provide him with the opportunity to amend his complaint also in the event that the defendants have filed a FRCP 12 (b)(6) motion to dismiss for failure to state a claim for which relief can be granted and/or the defendants issue a dispositive motion in the form of an FRCP Rule 56 summary judgment and/or an FRCP Rule 55 default judgment.

3.) In addition, the plaintiff articulates that there is a "genuine issue of material fact" and that compelling discovery and trial would be appropriate according to Rules 26 and 37 of the Federal Rules of Civil Procedure (FRCP).

4.) In the event that witnesses needed to be subpoenaed according to Rule 45 of the Federal Rules of Civil Procedure (FRCP) and/or documents need to be subpoenaed according to subpoenas duces tecum, the plaintiff further asserts that this case should be adjudicated on the merits without being dismissed pursuant to a dispositive motion or some other procedural argument.

5.) Furthermore, the plaintiff is seeking to assess joint and several liability against all five of the defendants in which they will presumably file cross-claims against one another to seek contribution and indemnity from each other, and that the plaintiff is not contributorily negligent with regards any of these causes of action requiring a negligence standard regardless of

2

whether this is a pure or modified comparative negligence jurisdiction or
contributory negligence jurisdiction.

## II.) PARTIES TO THIS LITIGATION

6.) The plaintiff is an indigent, disabled, and unemployed resident of the state of
Nevada. His current mailing address is 6655 38th Lane East, Sarasota, FL 34243.
His cell phone number is currently (703)936-3043 and his primary email address is
einsteinrockstar2@outlook.com. The plaintiff is filing this cause of action in the
U.S. District Courts of Southern Florida, Middle Florida, and Northern Florida
because of the fact that the plaintiff attended law school at Saint Thomas
University School of Law in Miami Gardens, Florida and also took the bar exam at
Ybor City in Tampa, Florida back in 2004 (which is administered by the Florida
Board of Bar Examiners domiciled in Tallahassee, Florida in the Northern District
of Florida). The plaintiff also took the Multi-state Professional Responsibility
Exam (MPRE) at the Broward Convention Center in Fort Lauderdale back in 2005
(i.e. Broward County, Florida).

7.) The first defendant is the United States Department of Education. Its address if
the following U.S. Department of Education, 400 Maryland Avenue, SW
Washington, D.C. 20202. The phone number is 1-800-872-5327.

8.) The second defendant is Secretary Betsy DeVos and the address is also the
same as the U.S. Department of Education at the following address: U.S.
Department of Education, 400 Maryland Avenue, SW Washington, D.C. 20202.
The phone number is 1-800-872-5327.

9.) The third defendant is the Default Resolution Group which appears to be a
division of the United States Department of Education. The mailing address for the
Default REsolution Group is the following: **Correspondence Address - Default
Resolution Group,** U.S. Department of Education, PO Box 5609, Greenville,TX
75403-5609. The address for the Default Resolution Group is the following: U.S.
Department of Education, Attn: FFEL Assignments, 6201 Interstate 30, Greenville,

3

TX 75402. The phone number for the Default Resolution Group is the following:
**1-800-621-3115**

10.) The fourth defendant is NelNet.The fourth defendant is NelNet. The contact
information for the fourth defendant is the following: U.S. Department of
Education, P.O. Box 87130, Lincoln, Nebraska 68501 and their other address is
U.S. Department of Education 121 South 13th Street, Suite 201, Lincoln, Nebraska
68508. Their email address is disabilityinformation@nelnet.net. Their telephone
number is 1-888-303-7818 and their fax number is 1-303-696-5250.

11.) The fifth and final defendant is a collection agency "doing business as" (d/b/a)
Action Financial Services, Inc.. The contact information for Action Financial
Services is the following: **Action Financial Services, LLC,** PO Box 3250, Central
Point, Oregon 97502, Phone: 1-888-253-4239, Fax: 1-844-965-9229. The other
address for Action Financial Services is the following: 2055 Cardinal Ave,
Medford, OR 97504

### III.) JURISDICTION AND VENUE

12.) According to Federal Rules of Civil Procedure 8(a)(1), Plaintiff is required to
provide "a short and plain statement of the grounds for the court's jurisdiction,
unless the court already has jurisdiction and the claim needs no new jurisdictional
support;"

13.) Because the court does not already have personal or subject matter jurisdiction
over this issue, it is necessary to engage in a brief discussion of the court's
jurisdiction so that the defendants can not move to dismiss this case based on
procedural grounds involving a lack of proper jurisdiction.

14.) Pursuant to 28 U.S.C.A. Section 1332, the U.S. District Court for the Eastern
District of Missouri (as an Article III court) has jurisdiction over this matter
because there is complete diversity of jurisdiction between the Plaintiff and the
sole defendant.

15.) As an Article III court, the U.S. District Court for the Eastern District of Missouri also has subject matter jurisdiction over the present case at bar because this proceeding involves a discussion of Title VII of the Civil Rights Act of 1964, Americans with Disabilities Act of 1990, Equal Protection Clause, Due Process Clause, Fourth Amendment, and Privileges and Immunities Clause.

16.) Therefore, a federal question is presented by the implication of the black-letter law of the aforementioned federal statutes in addition to the discussion of Constitutional Law provisions.

17.) Venue in this jurisdiction is also proper pursuant to 28 U.S.C.A. Sections 1391 and 1400.

18.) Because the amount in controversy exceeds $75,000 (i.e. $250,000 is greater than $75.000), this court also has jurisdiction with regards to that particular issue.

## IV.) STATEMENT OF FACTS

19.) On or around the early parts of 1993, the plaintiff won a Carl Rowan Project Excellence Scholarship and was congratulated by Ed Bradley of 60 Minutes at the awards ceremony in Washington, D.C..

20.) Pursuant to Rule 201 of the Federal Rules of Evidence (FRE), the court can take judicial notice that the late Carl Rowan was a famous African-American journalist from Washington, D.C..

21.) Although the plaintiff won a complete scholarship to Washington College on the eastern shore of Maryland, the plaintiff traded this complete scholarship in to instead obtain a $5,000 scholarship to Brown University.

22.) The court can take judicial notice that Ivy League schools such as Brown University and Dartmouth College in New Hampshire (where the plaintiff's cousin Jenny Bransford attended) do not offer scholarships, rather they only offer grants,

and that Brown University did not have a Grade Point Average System (GPA) when the plaintiff started attending Brown University in the latter part of 1993.

23.) The court can also take judicial notice that the plaintiff's cousin Jenny Bransford played the role of "Carly" on ABC's soap opera "General Hospital" and was also an actress on "One Life to Live."

24.) The court can also take judicial notice that the plaintiff's other cousin Katharine Bransford attended UCLA and was vice-president on the trading floor of Goldman Sachs. Her marriage to lawyer Jeff Zukerman was featured in an edition of Lifetime Magazine (allegedly owned by the conglomerate Viacom based off of Broadway in New York, New York) with the country singer Faith Hill on the cover which also featured an article about the plaintiff's former boss in Fairfax, VIrginia, i.e. family attorney Pamela Cave (the plaintiff was her paralegal at the Law Firm of Atchuthan Sris, P.C.).

25.) The court can also take judicial notice that Atchuthan Sris was the former prosecutor for the town of Haymarket, Virginia, i.e. a town where the plaintiff recorded his reggaeton song "La Reina Cubana" with Patrick Hightower of Street Star Studios.

26.) The court can also take judicial notice that the plaintiff's song "La Reina Cubana" won an American Idol Underground Award (d/b/a Fluid Audio Networks) and won Honorable Mention in the John Lennon Songwriting Competition (JLSC) through a company d/b/a Sonicbids, Inc. domiciled in Boston, Massachusetts.

27.) The plaintiff was able to work with Patrick Hightower because Patrick Hightower was the former tenant of the plaintiff's promoter Thomas Hart of On The Potomac, Inc. of Washington, D.C..

28.) The court should also take judicial notice that the plaintiff married Sabine Aisha Jules at a chapel in Las Vegas, Nevada on the same day that his cousin Katharine Bransford married the Jewish lawyer Jeff Zukerman in New York, New York. This date was August 31st, 2002.

29.) Nevertheless, when the plaintiff started attending Brown University in the latter part of 1993, he vaguely remembers signing paperwork at the Bursar's Office associated with a Perkins and Stafford Loan and perhaps a Pell grant.

30.) The plaintiff also vaguely remembers becoming indebted to Sallie Mae, Inc., Brown University, and the Direct Loans department of U.S. Department of Education in Utica, New York.

31.) The plaintiff tried to get a Master's Degree in Biology at University of Memphis in 1997 and started attending law school at Saint Thomas University School of Law in Miami Gardens, Florida in August of 1999 (after he visited his former fiance Rachel Garcia in Santiago de Cuba).

32.) When the plaintiff started attending law school at Saint Thomas University, he remembers communicating with someone named Andres Marrero in the Financial Aid office of Saint Thomas.

33.) Accordingly, the plaintiff remembers becoming indebted to a company d/b/a the Access Group which the plaintiff believes is the same company as Kentucky Higher Education Student Loan Corporation (KHESLC).

34.) The plaintiff remembers taking out student loans to attend the Summer in Spain program at Saint Thomas where he took courses in Comparative Citizenship and International Debtor/Creditor Relations in San Lorenzo del Escorial in Madrid, Spain taught by the professors Linda Kelly, Esquire and Professor Malloy.

35.) The plaintiff remembers staying at the Hotel Floridablanca in Madrid and meeting a waitress there named Alina Alvarez (from Cuba) who wrote the plaintiff a letter (when he was living at Pembroke Pines off of Hiatus Road in Florida) saying that she thought that she was pregnant with the plaintiff's baby.

36.) In the summer of 2001, the plaintiff also attended a study abroad program in Buenos Aires, Argentina where he took courses affiliated with the University of Tulsa with regards to the subjects of International Health/Human Relations (focusing heavily on Hannah Arendt and her book Eichmann in Jerusalem: The Banality of Evil), International Sales (studying INCOTERMS), and International Business Transactions (studying letters of credit, bills of lading, and many other topics closely related to Admiralty Law subjects such as the Jones Act for seaworthiness of a vessel, Harter Act, Carriage of Goods on Sea Act (COGSA), Death on High Seas Act (DOHSA), Hague-Visby Amendments, etc..).

37.) The course on International Business Transactions was taught by Professor Bruce Carolan and the course on International Health/Human Relations was taught by Professor Martin Bohmer.

38.) With regards to this University of Tulsa study abroad program, the plaintiff also traveled to Foz do Iguacu (Iguassu Falls) in Brazil and the U.S. Embassy in Argentina in addition to the Brazilian Embassy in Argentina (to obtain a visa to travel to Iguassu Falls).

39.) The plaintiff remembers going to a club called Alchemia in Iguassu Falls, Brazil where the plaintiff had a paranormal experience. The court can take judicial notice that the VIctoria's Secret supermodel is from Salvador da Bahia in Brazil which has the same acronym "SDB" as "Satish Dat Beast" or "Sheila Darlene

**Bu**ckaloo" whom the plaintiff met at Arlington Memorial Hospital in Arlington, Texas.

40.) The court can take judicial notice that the plaintiff had to file a complaint against attorney Kara Pratt in 2019 with the Texas Bar Chief Disciplinary Counsel (CDC) because of the fact that she was showing pictures of the plaintiff in a Texas courtroom simply because he was a friend trying to provide character evidence on behalf of Sheila Darlene Buckaloo when she was trying to retain custody of her son.

41.) The court also can take judicial notice that the plaintiff visited the U.S. Embassy in Panama in 2015 when he was visiting his girlfriend Edna Carrasco Caballero of David and Chiriqui in Panama.

42.) At the U.S. Embassy in Panama, the plaintiff met a woman named Carmen Miranda and also filled out paperwork mentioning something about his friend Harold Houston of Las Vegas, Nevada (perhaps a past recollection recorded would be necessary to refresh the plaintiff's memory about this paperwork mentioning Harold Houston).

43.) Nevertheless, the plaintiff also obtained a partial scholarship to the University of Arizona Eller College of Business which he briefly attended in 2002 before withdrawing from the program and marrying his ex-wife in Las Vegas (the plaintiff had to withdraw from his lease at Rillito Village apartments in Tucson, Arizona).

44.) With regards to his brief study at the University of Arizona Eller College of Business, the plaintiff remembers signing paperwork associated with loans being taken out from Southwest Student Services Corporation.

45.) Back in 1999, the plaintiff remembers being accepted into and receiving a partial scholarship to the Saint Louis University School of Law.

46.) In the year 2003, the plaintiff received a complete and full scholarship to the University of Arkansas Walton College of Business on the recommendation of Professor Gerald Jordan (from the School of Journalism) and his wife Professor Elizabeth Jordan (from the School of Education).

47.) The court can take judicial notice that the plaintiff's parents knew Professors Elizabeth and Gerald Jordan because of the fact that the plaintiff's sister Lisa Leahy (of Hagerstown, Maryland) attended Penn State University with Candy Jordan, i.e. the daughter of Professors Elizabeth and Gerald Jordan.

48.) While the plaintiff was attending the University of Arkansas MBA program, he remembers signing paperwork associated with the Mohela Corporation (with its nerve center and/or principal place of business (ppb) supposedly in Saint Louis, MIssouri under the jurisdiction of the Eighth CIrcuit Court of Appeals).

49.) With regards to the plaintiff's student loans with the Sallie Mae, Brown University, Direct Loans (i.e. U.S. Department of Education), Southwest Student Services Corporation, Access Group/KHESLC, and/or Mohela Corporation, the plaintiff believes that they had all been consolidated somehow.

50.) With regards to the plaintiff's consolidated student loans, they have all apparently been classified as "defaulted" notwithstanding the fact that the plaintiff's student loans should have either been forgiven and discharged (because of his disability of bipolar disorder/schizoaffective disorder) or "economically deferred" because of "Financial Hardship" or "Forbearance."

51.) Because of the fact that the plaintiff's student loans were neither deferred or discharged/forgiven, the Treasury Offset Program (TOP) has allowed the U.S.

Department of Education to garnish at least 15% of the plaintiff's disability check from the Social Security Administration (SSA).

52.) The plaintiff tried to get this garnishment to be stopped through the Default Resolution Group, NelNet, and Action Financial Services, but none of these agencies have been able to help the plaintiff get his student loans discharged and/or forgiven because of permanent disability and/or economic hardship.

53.) Furthermore, the plaintiff has been in and out of mental facilities and/or psychiatric wards in the following states: Nevada, California, Minnesota, Iowa, Maryland, Texas, and Florida.

54.) While the plaintiff estimates that he has been evaluated by at least 30 psychiatrists in the states of Nevada, California, Minnesota, Iowa, Maryland, Texas, and Florida, the plaintiff does not yet have a psychiatrist in Sarasota, Florida that he can visit on an outpatient basis.

55.) The court can also take judicial notice that the plaintiff had previously visited the offices of a nurse (perhaps registered nurse) named Alice Bolton in Sarasota, Florida and had also been sent to Suncoast Behavioral Health by Manatee Memorial Hospital and had also voluntarily been admitted under The Baker Act at Centerstone Behavioral Health in Bradenton, Florida.

### V.) COUNT ONE: MATERIAL BREACH OF CONTRACT

56.) A breach of contract is material if, as a result of the breach, the nonbreaching party does not receive the substantial benefit of his or her bargain. If the breach is material, the nonbreaching party (i) may treat the contract as at an end (any duty of counter-performance is discharged), and (ii.) has an immediate right to all remedies

for breach of the entire contract, including total damages (Note that a minor breach, if coupled with anticipatory repudiation, is treated as a material breach).

57.) In determining whether a breach is material or minor, the courts look at the following factors:

i.) The amount of benefit received by the nonbreaching party;

ii.) The adequacy of compensation for damages to the injured party;

iii.) The extent of part performance by the breaching party;

iv.) Hardship to the breaching party;

v.) Negligent or willful behavior of the breaching party; and

vi.) The likelihood that the breaching party will perform the remainder of the contract.

58.) The plaintiff argues that the five defendants committed a material breach of contract in the first instance by placing the plaintiff's loans in default causing him to have a negative credit score and/or FICO score with the three major credit bureaus, i.e. Experian, Equifax, and Transunion such that the plaintiff can not sign a lease to get an apartment without a co-signer/guaranty/surety nor can the plaintiff obtain a mortgage from an FDIC-insured commercial bank.  Furthermore, the plaintiff argues that the five defendants have committed a material breach of contract by placing his loans in default when they should have allowed him to defer his loans through signing

paperwork associated with an "Economic Hardship" and/or "Forbearance." The plaintiff can not remember specifically (and perhaps evidence in the form of past recollection recorded is necessary) but the plaintiff believes in "good faith" that he took out a Perkins and Stafford Loan and perhaps a Pell grant (the Pell grant may not have been awarded as the plaintiff can not remember). In 2005, the plaintiff had to file for Chapter 7 bankruptcy in the U.S. District Court of Maryland at 6550 Cherrywood Lane in Greenbelt, Maryland where the presiding judge was Judge Nancy Alquist and the plaintiff's trustee was Wendelin Lipp, Esquire of Bethesda, Maryland. The plaintiff's case was dismissed because of the fact that he failed to attend a 341 meeting of creditors. The plaintiff filed for bankruptcy again in 2015 in the U.S. District Court of Nevada in which the plaintiff's trustee was Yvette Weinstein, Esquire of Las Vegas, Nevada who allowed the plaintiff to dismiss his case because the plaintiff was worried that he would lose title to his Mercedes Benz C-230 (a depreciated asset whether using the Straight-Line method of depreciation (S/L), double-declining balance method, Sum-of-the-Years' Digits, or Modified Accelerated Cost Recovery System (MACRS) which is usually document on IRS Form 6251).

https://www.irs.gov/forms-pubs/about-form-4562

https://www.irs.gov/pub/irs-pdf/f4562.pdf

https://www.irs.gov/pub/irs-prior/i4562--2018.pdf

https://www.investopedia.com/articles/personal-finance/022415/filling-out-form-45
62-stepbystep.asp

Nevertheless, pursuant to Rule 201 of the Federal Rules of Evidence (FRE)), the court

can take judicial notice that student loans and child support (and perhaps rehabilitative

and permanent alimony and alimony pendente lite) are considered to be

non-dischargeable debt under the rules of bankruptcy notwithstanding the fact that

Article 1, Section 11 of the Florida Constitution precludes, enjoins, and/or prohibits

the imprison for debt.

## **VI.) COUNT TWO: VIOLATION OF THE EQUAL PROTECTION CLAUSE INHERENT FROM THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION**

59.) Because of the fact that the plaintiff is African-American, it can be stated with

substantial certainty that he is a member of a suspect classification of discrete and

insular minorities which have suffered invidious discrimination within the context

of American jurisprudence.

60.) As such, any federal, state, or local laws/regulations infringing upon the

plaintiff's rights by garnishing 15% of his disability check (notwithstanding the

fact that he is disabled) must pass a strict scrutiny test as opposed to an

intermediate scrutiny test or rational basis test.

61.) More specifically, the burden of proof and persuasion rests squarely with the

defendants to show by a preponderance of the evidence that any federal, state, or

local laws allowing for the garnishing of at least 15% of his disability check must be narrowly-tailored to a compelling government objective.

62.) The plaintiff argues that the five defendants have violated his Equal Protection Rights inherent from the Fifth and Fourteenth Amendments to the Constitution by garnishing at least 15% of his disability check through the U.S. Treasury Offset Program.

## VII.) COUNT THREE: VIOLATION OF THE DUE PROCESS CLAUSE INHERENT FROM THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION

63.) Because of the fact that the plaintiff is African-American, it can be stated with substantial certainty that he is a member of a suspect classification of discrete and insular minorities which have suffered invidious discrimination within the context of American jurisprudence.

64.) As such, any federal, state, or local laws/regulations infringing upon the plaintiff's rights by garnishing 15% of his disability check (notwithstanding the fact that he is disabled) must pass a strict scrutiny test as opposed to an intermediate scrutiny test or rational basis test.

65.) More specifically, the burden of proof and persuasion rests squarely with the defendants to show by a preponderance of the evidence that any federal, state, or local laws allowing for the garnishing of at least 15% of his disability check must be narrowly-tailored to a compelling government objective.

66.) The plaintiff argues that the five defendants have violated his Equal Protection Rights inherent from the Fifth and Fourteenth Amendments to the Constitution by garnishing at least 15% of his disability check through the U.S. Treasury Offset Program.

## VIII.) COUNT THREE: VIOLATION OF THE PRIVILEGES AND IMMUNITIES CLAUSE OF ARTICLE IV, SECTION 2, CLAUSE 1 OF THE U.S. CONSTITUTION

67.) Because of the fact that the plaintiff is African-American, it can be stated with substantial certainty that he is a member of a suspect classification of discrete and insular minorities which have suffered invidious discrimination within the context of American jurisprudence.

68.) As such, any federal, state, or local laws/regulations infringing upon the plaintiff's rights by garnishing 15% of his disability check (notwithstanding the fact that he is disabled) must pass a strict scrutiny test as opposed to an intermediate scrutiny test or rational basis test.

69.) More specifically, the burden of proof and persuasion rests squarely with the defendants to show by a preponderance of the evidence that any federal, state, or

local laws allowing for the garnishing of at least 15% of his disability check must be narrowly-tailored to a compelling government objective.

70.) The plaintiff argues that the five defendants have violated his Equal Protection Rights inherent from the Fifth and Fourteenth Amendments to the Constitution by garnishing at least 15% of his disability check through the U.S. Treasury Offset Program.

## VIII.) COUNT FOUR: VIOLATION OF 42 U.S.C. SECTION 1983

71.) According to Cornell Law School and The Legal Information Institute, 42 U.S.C. Section 1983 provides in pertinent part that, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

72.) The plaintiff argues that the five defendants have violated 42 U.S.C. Section 1983 by garnishing at least 15% of his disability check through the Treasury Offset Program.

## IX.) COUNT FIVE: VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

73.) According to the website operated by the American Association of University Women (AAUW), "Title VII of the Civil Rights Act of 1964 is a federal law that prohibits employers from discriminating against employees on the basis of sex, race, color, national origin, and religion. It generally applies to employers with 15 or more employees, including federal, state, and local governments. Title VII also applies to private and public colleges and universities, employment agencies, and labor organizations."

74.) The plaintiff argues that the five defendants have violated Title VII of the Civil Rights Act of 1964 by garnishing at least 15% of his disability check through the Treasury Offset Program.

## X.) COUNT SIX: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 (ADA)

75.) According to the website ADA.gov, "The Americans with Disabilities Act (ADA) was signed into law on July 26, 1990, by President George H.W. Bush. The ADA is one of America's most comprehensive pieces of civil rights legislation that prohibits discrimination and guarantees that people with disabilities have the same

opportunities as everyone else to participate in the mainstream of American life --

to enjoy employment opportunities, to purchase goods and services, and to

participate in State and local government programs and services. Modeled after the

Civil Rights Act of 1964, which prohibits discrimination on the basis of race, color,

religion, sex, or national origin – and Section 504 of the Rehabilitation Act of 1973

-- the ADA is an "equal opportunity" law for people with disabilities.  To be

protected by the ADA, one must have a disability, which is defined by the ADA as

a physical or mental impairment that substantially limits one or more major life

activities, a person who has a history or record of such an impairment, or a person

who is perceived by others as having such an impairment. The ADA does not

specifically name all of the impairments that are covered."

76.) In the present case at bar, the plaintiff argues that the five defendants are all

considered to be "covered entities" within the plain language of the black-letter law

of the American with Disabilities Act of 1990 (ADA).

77.) Because of the fact that the plaintiff has suffered and continues to suffer from

bipolar disorder, schizoaffective disorder, obsessive compulsive disorder, and

post-traumatic stress disorder (PTSD), it is asserted with substantial certainty that

the plaintiff is disabled and therefore covered by the ADA of 1990.

78.) More specifically, the plaintiff has been determined to be disabled by Dornita

McKinnon of the state of Maryland as well as the Social Security Administration

(SSA) which continues to pay the plaintiff monthly benefits in the amount of $789.00 (with Medicare/Medicaid and Humana giving him medical insurance).

79.) The plaintiff argues that the five defendants have violated the Americans with Disabilities Act of 1990 by garnishing at least 15% of his disability check through the Treasury Offset Program.

## XI.) COUNT SEVEN: NEGLIGENCE

80.) In order to prove a prima facie case for negligence, the following elements must be proved:

i.) A duty on the part of the defendant to conform to a specific standard of conduct for protection of the plaintiff against an unreasonable risk of injury;

ii.) A breach of that duty by the defendant;

iii.) The breach is the actual and proximate cause of the plaintiff's injury; and

iv.) Damage

81.) The plaintiff argues that the five defendants have committed gross negligence by garnishing at least 15% of his disability check through the Treasury Offset Program without first learning that the plaintiff is disabled with bipolar disorder and schizoaffective disorder.

## XII.) COUNT EIGHT: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

82.) To prove the elements of intentional infliction of emotional distress in Florida, a plaintiff must prove the following five elements:

a.) the wrongdoer's conduct was intentional or reckless,that is, he intended his behavior when he knew or should have known that emotional distress would likely result;

b.) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community;

(c.) the conduct caused emotional distress; and

(d.) the emotional distress was severe.

83.) The relevant common law or case-law (invoking stare decisis and persuasive precedent) is according to ***Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949 (Fla. 3d DCA 2017)**.

84.) The court of course has constructive notice that if even only one element is not proven by the plaintiff, or if even one element is disproven by the defendant, it may be reversible error for the court to rule in the plaintiff's favor. All four elements must be shown to prove that the intentional infliction of emotional distress has occurred.

85.) The plaintiff argues that the five defendants have committed the intentional infliction of emotional distress (IIED) because it is extreme and outrageous that they would garnish at least 15% of his disability check without first realizing that the plaintiff is severely disabled with bipolar disorder and schizoaffective disorder.

## XIII.) COUNT NINE: TORTIOUS INVASION OF PRIVACY THROUGH INTRUSION UPON SECLUSION AND "FALSE LIGHT"

86.) Intrusion, or intrusion upon seclusion, is a type of invasion of privacy that involves interference with the solitude or seclusion of another.

87.) But simply intruding on the privacy of someone isn't enough to make a person liable for intrusion: the law requires the person filing an intrusion lawsuit to prove that the intrusion happened in a certain way.

88.) Laws governing intrusion can vary from state to state. However, in most states a plaintiff (the person filing a lawsuit) must prove that all of the following occurred:

- The defendant (the person being sued) intentionally invaded the plaintiff's privacy.
- The intrusion would be highly offensive to a reasonable person.
- The intrusion was on a private matter of the plaintiff's.
- The intrusion caused the plaintiff emotional anguish or suffering.

89.) The plaintiff argues that the sole defendant FBI committed an invasion of privacy through intrusion upon seclusion or even "false light" by garnishing at least 15% of his disability check through the Treasury Offset Program without first realizing that the plaintiff is severely disabled with bipolar disorder and schizoaffective disorder.

## XIV.) PRAYER FOR RELIEF

WHEREFORE, the plaintiff is requesting a remedy at law in the form of a judgment in the amount of $250,000 (two-hundred and fifty thousand dollars). This remedy at law would be appropriate considering the fact that the sole defendant the five defendants have committed negligence, the intentional infliction of emotional distress (IIED), and invasion of privacy through "intrusion upon seclusion" and "false light." Moreover, the five defendants have committed a violation of the following "black-letter law" provisions of federal law: 42 U.S.C. Section 1983, Title VII of the Civil Rights Act of 1964, and the Americans with Disabilities Act of 1990 (ADA). Furthermore, the five defendants have violated the Equal Protection Clause and Due Process Clause of the Fifth and Fourteenth Amendments to the U.S Constitution in addition to having violated the Privileges and Immunities Clause of Article IV, Section 2, Clause 1 of the U.S. Constitution, the Fourth Amendment rights to a "reasonable expectation of privacy" (see ***Katz v. United States***, supra) and perhaps invoking a broad assertion and interpretation of

the Eighth Amendment right to be free from cruel and unusual punishment. In

asserting this "prayer for relief," the plaintiff states, avers, and alleges the

following:

A.) The remedy at law in the form of a judgment in the amount of $250,000 (two

hundred and fifty thousand dollars) would also be appropriately considered to be

punitive, compensatory, treble, actual, presumed, and special damages for the

defendants' commission of negligence or negligence per se in addition to a

violation of the following "black-letter law" provisions of federal law: 42 U.S.C.

Section 1983, Title VII of the Civil Rights Act of 1964, and the Americans with

Disabilities Act of 1990 (ADA).

B.) The remedy at law in the form of a judgment in the amount of $250,000 would

also be considered appropriate given that it has been proved that the five

defendants have violated the plaintiff's rights with regards to the Equal Protection

Clause and Due Process Clause (inherent from the Fifth and Fourteenth

Amendments) and the Privileges and Immunities Clause (of Article IV, Section 2,

Clause 1) in addition to the Fourth Amendment right to a reasonable expectation of

privacy and perhaps the Eighth Amendment right to be free from cruel and unusual

punishment.

C.) The plaintiff is also requesting the equitable remedy of an injunction or specific performance mandating that the five defendants cease and desist from garnishing at least 15% of the plaintiff's disability check through the Treasury Offset Program.

Respectfully submitted,

Ronald Satish Emrit

6655 38th Lane East

Sarasota, Florida 34243

(703)936-3043

einsteinrockstar@hotmail.com

einsteinrockstar2@outlook.com